**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

In re:

ROY A. WALLACE,                                          **CHAPTER 13**

      DEBTOR.                                          **CASE NO. 18-14827**

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR BCAPB, TRUST LLC 2007-AB1
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-AB1,

      MOVANT,
vs.
ROY A. WALLACE
and ROBERT S. THOMAS, II, TRUSTEE,

      RESPONDENTS.

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**(REAL PROPERTY LOCATED AT 2804 BECKON DRIVE, EDGEWOOD, MD 21040)**

      Deutsche Bank National Trust Company, as Trustee for BCAPB Trust LLC 2007-AB1 Mortgage Pass-Through Certificates, Series 2007-AB1 ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of **2804 Beckon Drive, Edgewood, MD 21040** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose. In further support of this Motion, Movant respectfully states:

      1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on April 11, 2018.

      2.      A hearing to consider confirmation of the Chapter 13 Plan of the Debtor is scheduled for August 21, 2018.

      3.      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $150,400.00 (the "Note"). A copy of the Note is attached hereto as <u>Exhibit A</u>.

      4.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust. The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Harford, Maryland. A copy of the recorded Deed of Trust is attached hereto as <u>Exhibit B</u>.

5.      The terms of the Note were amended by a loan modification agreement entered into by and between Wells Fargo Bank, N.A. and the Debtor dated May 17, 2013 (the "Loan Modification Agreement").  A copy of the Loan Modification Agreement is attached hereto as Exhibit C.

6.      Wells Fargo Bank, N.A. services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant.  Debtor executed a promissory note secured by a mortgage or deed of trust.  The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary or assignee of the mortgage or deed of trust.

7.      As of July 31, 2018, the unpaid principal balance due is $155,042.29 and the outstanding amount of Obligations less any partial payments or suspense balance is $159,168.51.

8.      The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note as of July 31, 2018:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 3 | 5/1/2018 | 7/1/2018 | $752.01 | $2,256.03 |
| Less post-petition partial payments (suspense balance): | | | | ($0.00) |

Total Post-Petition Payments:  **$2,256.03**

9.      As of July 31, 2018, the total post-petition arrearage/delinquency is $2,256.03, consisting of (i) the foregoing total of post-petition payments in the amount of $2,256.03, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| N/A | N/A |

10.      The following chart sets forth the pre-petition payments and any fees due pursuant to the terms of the Note at the time of bankruptcy filing:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 1 | 4/1/2018 | 4/1/2018 | $750.85 | $750.85 |
| Less pre-petition partial payments (suspense balance): | | | | ($0.00) |

Total Payments:  $750.85

| Fee Description | Amount |
|---|---|
| Attorney Fees | $1,270.00 |
| Foreclosure Fees | $91.25 |
| Escrow Shortage | $221.94 |

Total:  **$2,334.04**

11.     The following chart sets forth the contractual payments and any fees due pursuant to the terms of the Note as of July 31, 2018:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 1 | 4/1/2018 | 4/1/2018 | $750.85 | $750.85 |
| 3 | 5/1/2018 | 7/1/2018 | $752.01 | $2,256.03 |
| Less partial payments (suspense balance): | | | | ($0.00) |
| | | | Total Payments: | $3,006.88 |

| Fee Description | Amount |
|---|---|
| Attorney Fees | $1,270.00 |
| Foreclosure Fees | $91.25 |

**Total:  $4,368.13**

12.     The estimated value of the Property is $120,000.00.  The basis for such valuation is: Debtor's Amended Schedule A/B, a copy of which is attached hereto as <u>Exhibit D</u>.

13.     Cause exists for relief from the automatic stay for the following reasons:

     i.     Movant's interest in the Property is not adequately protected.

     ii.     Post-Petition payments have not been made to Movant.

     iii.     Pursuant to 11 U.S.C. §362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to §362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.     That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.     For such other relief as the Court deems proper.

Dated: August 17, 2018.

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR BCAPB TRUST LLC 2007-AB1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AB1

By: /s/Randa S Azzam
Randa S. Azzam, Esquire, Bar No. 22474
Deena L. Reynolds, Esquire, Bar No. 17956
John E. Driscoll, Esquire, Bar No. 17161
Michael T. Freeman, Esquire, Bar No. 19131
Daniel J. Pesachowitz, Esquire, Bar No. 14906
Samuel I. White, P.C.
611 Rockville Pike
Suite 100
Rockville, MD 20852
Tel: (301) 804-3400
Fax: (301) 838-1954
RAzzam@siwpc.com

## CERTIFICATE OF SERVICE

I certify that on August 17, 2018, the foregoing Motion was served via CM/ECF on Robert S. Thomas, II, Trustee, and James R. Logan, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Roy A. Wallace, Debtor, 3425 Tewkesbury Rd, Abingdon, MD 21009-1095.

**/s/Randa S Azzam** _____
Randa S. Azzam, Esquire
Samuel I. White, P. C.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

In re:

ROY A. WALLACE,                                          CHAPTER 13

      DEBTOR.                                          CASE NO. 18-14827

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR BCAPB TRUST LLC 2007-AB1
MORTGAGE     PASS-THROUGH     CERTIFICATES,
SERIES 2007-AB1,

      MOVANT,

vs.

ROY A. WALLACE
and ROBERT S. THOMAS, II, TRUSTEE,

      RESPONDENTS.

**NOTICE OF MOTION AND OPPORTUNITY TO OBJECT TO MOTION
FOR RELIEF FROM THE AUTOMATIC STAY AND HEARING THEREON**

      Deutsche Bank National Trust Company, as Trustee for BCAPB Trust LLC 2007-AB1
Mortgage Pass-Through Certificates, Series 2007-AB1 ("Movant"), has filed papers with the court
seeking relief from the automatic stay of 11 U.S.C. §362(a) to enable it to proceed to foreclose on
its Deed of Trust referencing the subject property known as **2804 Beckon Drive, Edgewood, MD
21040**.  Your rights may be affected.  You should read these papers carefully and discuss them
with your lawyer, if you have one in this bankruptcy case.  (If you do not have a lawyer, you may
wish to consult one.).

      If you do not want the court to grant the motion for relief from the stay, or if you want the
court to consider your views on the motion, then by **August 31, 2018** (parties served by mail may
add three (3) additional days to the response deadline) you or your lawyer must file a written
response with the Clerk of the Bankruptcy Court explaining your position and mail a copy to:

      Randa S. Azzam            Robert S. Thomas, II
      611 Rockville Pike, Suite 100     300 E Joppa Road, Suite 409
      Rockville, MD 20852          Towson, MD 21286

      If you mail a copy rather than deliver your response to the Clerk of the Bankruptcy Court
for filing, you must mail it early enough so that the Court will receive it by the date stated above.

      The hearing is scheduled for **October 4, 2018 at 2:00 PM**, in the United States
Bankruptcy Court for the District of Maryland, 101 West Lombard Street, Baltimore, MD 21201,
**Courtroom 2-A**.

IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.

DATE SERVED:  August 17, 2018

By: /s/Randa S Azzam
Randa S. Azzam, Esquire, Bar No. 22474
Deena L. Reynolds, Esquire, Bar No. 17956
John E. Driscoll, Esquire, Bar No. 17161
Michael T. Freeman, Esquire, Bar No. 19131
Daniel J. Pesachowitz, Esquire, Bar No. 14906
Samuel I. White, P.C.
611 Rockville Pike
Suite 100
Rockville, MD 20852
Tel: (301) 804-3400
Fax: (301) 838-1954
RAzzam@siwpc.com

CERTIFICATE OF SERVICE

I certify that on August 17, 2018, the foregoing Notice of Motion was served via CM/ECF on Robert S. Thomas, II, Trustee, and James R. Logan, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Roy A. Wallace, Debtor, 3425 Tewkesbury Rd, Abingdon, MD 21009-1095.

**/s/Randa S Azzam**
Randa S. Azzam, Esquire
Samuel I. White, P. C.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| In re:<br>**ROY A. WALLACE**<br><br>Debtor. | Chapter 13<br>Case No. 18-14827 |

**DECLARATION IN SUPPORT OF**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

I, Tonya R Caldwell, declare under penalty of perjury as follows:

1.      I am a/an Vice President Loan Documentation of Wells Fargo Bank, N.A. ("Wells Fargo") and am authorized to sign this declaration on behalf of Wells Fargo as servicing agent for Deutsche Bank National Trust Company, as Trustee for BCAPB Trust LLC 2007-AB1 Mortgage Pass-Through Certificates, Series 2007-AB1. This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.      As part of my job responsibilities for Wells Fargo, I have personal knowledge of and am familiar with the types of records maintained by Wells Fargo in connection with the account that is the subject of the Motion (the "Account") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Wells Fargo that pertain to the Account and extensions of credit given to the Debtor concerning the property securing such Account.

3.      The information in this declaration is taken from Wells Fargo's business records regarding the Account. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of Wells Fargo's regularly conducted business activities. It is the regular practice of Wells Fargo to create and maintain such records.

4.      The Debtor  has executed and delivered or is otherwise obligated with respect to the attached promissory note (the "Debt Agreement"). Pursuant to the attached Deed of Trust (the "Security Instrument"), all obligations of the Debtor under and with respect to the Debt Agreement and the Security Instrument are secured by the property referenced in the Motion. The terms of the Debt Agreement were amended by the attached loan modification agreement entered into by and between Wells Fargo Bank, N.A. and the Debtor dated May 17, 2013 (the "Loan Modification Agreement").

5.      As of July 31, 2018, there are one or more defaults in paying post-petition amounts due with respect to the Debt Agreement.

6.      As of July 31, 2018, the unpaid principal balance of the Debt Agreement is $155,042.29.

7.    The following chart sets forth those post-petition payments, due pursuant to the terms of the Debt Agreement, that have been missed by the Debtor as of July 31, 2018:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 3 | 5/1/2018 | 7/1/2018 | $594.38 | $157.63 | $752.01 | $2,256.03 |
| Less post-petition partial payments (suspense balance): | | | | | | ($0.00) |
| | | | | | Total: | $2,256.03 |

8.    As of July 31, 2018, the total post-petition arrearage/delinquency and amount necessary to cure the post-petition default alleged in the Motion is $2,256.03, consisting of (i) the foregoing total of missed post-petition payments in the amount of $2,256.03, plus (ii) the following post-petition fees:[1]

| Description | Amount |
|---|---|
| N/A | N/A |

9.    The following documents are attached as exhibits and incorporated herein by reference:

(a)    Attached hereto as Exhibit A is a true and correct copy of the Debt Agreement.

(b)    Attached hereto as Exhibit B is a true and correct copy of the Security Instrument.

(c)    Attached hereto as Exhibit C is a true and correct copy of the Loan Modification Agreement.

(d)    Attached hereto as Exhibit 1 is a post-petition payment history.

(e)    Attached hereto as Exhibit 2 is an addendum listing all fees and charges assessed to the account of the Debtor post-petition.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Tonya R Caldwell*
Tonya R Caldwell
Vice President Loan Documentation
Wells Fargo Bank, N.A., as servicer, for Deutsche Bank
National Trust Company, as Trustee for BCAPB Trust
LLC 2007-AB1 Mortgage Pass-Through Certificates,
Series 2007-AB1
August 16, 2018

---

[1]    The total of missed post-petition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, Wells Fargo will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

# **<u>Exhibit 1</u>**

Debtor name: ROY WALLACE

Bk Filing Date: 4/11/2018

First PP PmtDueDate/Amt: 5/1/2018 / $752.01

EXHIBIT 1

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
| | | | | | | $0.00 |
| 5/1/2018 | $752.01 | | | | | |
| 6/1/2018 | $752.01 | | | | | |
| 7/1/2018 | $752.01 | | | | | |
| Totals | $2,256.03 | | $0.00 | | $0.00 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Page 1 of 1

**Exhibit 2**

## Post-Petition Fee Breakdown Addendum

| DESCRIPTION OF FEE OR CHARGE | DATE INCURRED | AMOUNT |
|---|---|---|
| N/A | | N/A |
| | | |
| | | |
| | | |
| | | |
| TOTAL FEES AND CHARGES DUE | | N/A |



## BALLOON NOTE
*(Fixed Rate)*

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

<u>December 28, 2006</u>          <u>MONARCH BEACH</u>          <u>CALIFORNIA</u>
                                         *City*                              *State*

<u>2804 RECKON DRIVE, EDGEWOOD, MD  21040</u>
                              *Property Address*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.  $150,400.00 (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is _____
WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of  7.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on February, 2007.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on January 1, 2037    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:
<u>WELLS FARGO BANK, N.A.</u>
<u>P.O. BOX 11701, NEWARK, NJ  07101-4701</u>
or at a different place if required by the Note Holder.

#### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S.    $1,031.67.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Represents Redacted Information

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be the greater of    $2.00 or   5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

### Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section

18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____(Seal)
ROY WALLACE                                  -Borrower

                              (Sign Original Only)

**WITHOUT RECOURSE**
**PAY TO THE ORDER OF**

**WELLS FARGO BANK, N.A.**
**BY** *Joan M Mills*
Joan M. Mills, Vice President

Note-Balloon                          Form 3260  1/01          EC060L Rev.11/27/01
                                                                 PAGE 3 OF 3

## ADDENDUM TO NOTE
### (Prepayment)



THIS ADDENDUM is made this ..28th...... day of DECEMBER ...2006... and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1. The Note is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first ..three.. (.3...) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge as follows:

..X.. If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount. If within the third year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to one percent (1%) of the original principal amount.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three precent (3%) of the original principal amount.

2. In the event the maturity of the Note is accelerated for any reason during the applicable period of the prepayment charge, then the prepayment charge set forth herein shall be due and payable.

3. All interest, fees and other amounts charged or accruing in connection with the Note which are considered "interest" within the meaning of section 85 of the National Bank Act (12 USC & 85; 12 C.F.R. & 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, the Note and all related documents, as well as the rights, remedies, and duties of the Lender and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located.

4. All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: 12/28/06 _____ (Seal)
ROY WALLACE                                           -Borrower

**Exhibit B**

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0593, MSA_CE54_7169, Date available 02/15/2007. Printed 08/01/2018.

Return To:
WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121-1663

Prepared By:
LACRISHA MCDOWELL
WELLS FARGO BANK, N.A.
1401 WILLOW PASS RD
CONCORD, CA 94520-

| | |
|---|---|
| IMP FD SURE $ | 20.00 |
| RECORDING FEE | 75.00 |
| RECORDATION T | 993.30 |
| TOTAL | 1,088.30 |
| Res# HA03 | Rcpt # 28204 |
| JJR    JK | Blk # 1533 |
| Jan 18, 2007 | 10:41 am |

& Return to:
TransContinental Title Co.
4033 Tampa Rd Suite 101
Oldsmar, FL 34677
800-225-7897

———[Space Above This Line For Recording Data]———

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **DECEMBER 28, 2006** together with all Riders to this document.
**(B) "Borrower"** is
**ROY WALLACE**, as sole owner.

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **WELLS FARGO BANK, N.A.**

Lender is a **National Association**
organized and existing under the laws of **THE UNITED STATES OF AMERICA**

MARYLAND - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 1 of 18          Initials

FORM 3021    1/01
SMD01    Rev 11/08/00

LIBER **07166** FOLIO **593**

Represents Redacted Information

Lender's address is
**P. O. BOX 5137, DES MOINES, IA 50306-5137**
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **JOHN BURSON, ESQ.**

**(E) "Note "** means the promissory note signed by Borrower and dated **DECEMBER 28, 2006.**
The Note states that Borrower owes Lender **ONE HUNDRED FIFTY THOUSAND FOUR HUNDRED AND NO/100**                                                    Dollars
(U.S. $ ......150,400.00............) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   **JANUARY 1, 2037**

**(F) "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

**Prepayment Rider**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

SMD02   Rev 12/18/00            Page 2 of 18          Initials: _____          FORM 3021   1/01

**LIBER 07166 FOLIO 594**

HARFORD COUNTY CIRCUIT COURT (Land Records) JLR 7166, p. 0594, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0595, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA. **(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  |  |  |  |
|---|---|---|---|
| **County** | of | **HARFORD** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

|  |  |
|---|---|
| Parcel ID Number: | which currently has the address of |
| **2804 BECKON DRIVE** | [Street] |
| **EDGEWOOD** | [City] , Maryland   **21040**   [Zip Code] |
| ("Property Address"): | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

| SMD03   Rev 11/08/00 | Page 3 of 18 | | FORM 3021   1/01 |
|---|---|---|---|

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0596, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

SMD04    Rev 11/08/00              Page 4 of 18              Initial _____              FORM 3021    1/01

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0597, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0598, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0599, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0600, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument**. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0601, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SMD09    Rev 11/13/00                Page 9 of 18        Initial: _____        FORM 3021    1/01

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0602, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0603, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0604, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

HARFORD COUNTY CIRCUIT COURT (Land Records) JLR 7166, p. 0605, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

    **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

    As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

    **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

    **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

SMD13   Rev 11/08/00          Page 13 of 18          Initials: _____          FORM 3021   1/01

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0606, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0607, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0608, MSA_CE54_7169. Date available 02/15/2018. Printed 08/01/2018.

acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law . Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Turstee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of ...........5.00.................% of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

SMD16    Rev 11/15/00                Page 16 of 18            Initials _____        FORM 3021    1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          ROY WALLACE                Borrower


_____


HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0609, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

SMD17    Rev 12/27/00          Page 17 of 18          Initials          FORM 3021    1/01

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0610, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

**STATE OF MARYLAND,**    *Harford*    **County ss:**

I Hereby Certify, That on this **28TH** day of **DECEMBER, 2006** before me, the subscriber, a Notary Public of the State of Maryland, in and for the *Co. of Harford* personally appeared
**ROY WALLACE**

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

My Commission Expires: 5/1/2008    *Mary P Staron*
Notary Public

```
MARY P. STARON
Notary Public
Harford County
Maryland
My Comm. Expires May 1, 2008
```

**STATE OF MARYLAND**    **County ss:**

I Hereby Certify, That on this **28TH** day of **DECEMBER, 2006** , before me, the subscriber, a Notary Public of the State of Maryland and for the , personally appeared

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later thatn the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

My Commission Expires: **3/25/2010**    Notary Public

This is to certify that the within instrument was prepared by *Wells Fargo* , a party to the instrument.

**WELLS FARGO BANK, N.A.**

```
CHRISTOPHER SUH
Commission # 1654033
Notary Public - California
San Bernardino County
My Comm. Expires Mar 25, 2010
```

Closing Agent    *Marco Yon*
*Mark Jones*
*Loan Officer*

Initial

SMD18    Rev  01/03/03    Page 18 of 18    FORM 3021    1/01

LIBER **07166** FOLIO **610**

STATE OF FLORIDA                                    PINELLAS COUNTY

I HEREBY CERTIFY, THAT ON THIS 28th DAY OF *December 2006*
BEFORE ME, THE SUBSCRIBER, A NOTARY PUBLIC OF THE STATE OF FLORIDA AND
FOR THE COUNTY OF PINELLAS, PERSONALLY APPEARED:

Nancy Wodraska

THE AGENT OF THE PARTY SECURED BY THE FOREGOING DEED OF TRUST, AND
MADE OATH IN DUE FORM OF LAW THAT THE CONSIDERATION RECITED IN SAID
DEED OF TRUST IS TRUE AND BONA FIDE AS THEREIN SET FORTH AND THAT THE
ACTUAL SUM OF MONEY ADVANCED AT THE CLOSING TRANSACTION BY THE
SECURED PARTY WAS PAID OVER AND DISBURSED BY THE PARTY OR PARTIES
SECURED BY THE DEED OF TRUST TO THE BORROWER OR TO THE PERSON
RESPONSIBLE FOR THE DISBURSEMENT OF FUNDS IN THE CLOSING TRANSACTION
OR THEIR RESPECTIVE AGENT AT A TIME NOT LATER THAN THE EXECUTION AND
DELIVERY BY THE BORROWER OF THIS DEED OF TRUST; AND ALSO MADE OATH
THAT HE IS THE AGENT OF THE PARTY OR PARTIES SECURED AND IS DULY
AUTHORIZED TO MAKE THIS AFFIDAVIT.

AS WITNESS: MY HAND AND NOTARIAL SEAL.
MY COMMISSION EXPIRES:

*Gladys R. Foley*

*(AFFIX STAMP AND/OR SEAL HERE)*

GLADYS R. FOLEY
Notary Public - State of Florida
My Commission Expires Dec 1, 2009
Commission # DD 496038

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0611, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0612, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

███████████

## EXHIBIT "A"

BEING KNOWN AND DESIGNATED AS LOT 95, AS SHOWN ON THE
PLAT ENTITLED, "REVISED FINAL PLAT, PLAT ONE, WEST
SHORE", WHICH PLAT IS RECORDED AMONG THE LAND RECORDS
OF HARFORD COUNTY, MARYLAND, IN PLAT BOOK HDC NO. 50,
FOLIO 29.


BEING THE SAME PROPERTY CONVEYED TO ROY WALLACE BY
DEED FROM JOHN JOSEPH WELSCH AND HUYNH THI BAUGHER
RECORDED 12/21/2005 IN DEED BOOK 6479 PAGE 418, AMONG
THE LAND RECORDS OF HARFORD COUNTY, MARYLAND.

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0613, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 28th day of DECEMBER, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 2804 BECKON DRIVE
EDGEWOOD, MD 21040
*(Property Address)*

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as WEST SHORE
*(Name of Planned Unit Development)*

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER
Single Family - FNMA/FHLMC Uniform Instrument

Form 3150 1/01   (Page 1 of 3)
EC025L Rev. 11/13/00

LIBER 07166 FOLIO 613

HARFORD COUNTY CIRCUIT COURT (Land Records) JUR 7166, p. 0614, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.



**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender required insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

MULTISTATE PUD RIDER                                        Form 3150 1/01   (Page 2 of 3)
Single Family - FNMA/FHLMC Uniform Instrument              EC025L Rev. 11/13/00

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0615, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____(Seal)
ROY WALLACE                        -Borrower

MULTISTATE PUD RIDER                          Form 3150 1/01    (Page 3 of 3)
Single Family - FNMA/FHLMC Uniform Instrument          EC025L Rev. 11/13/00

LIBER 0 7 | 6 6 FOLIO 6 | 5

HARFORD COUNTY CIRCUIT COURT (Land Records) JLR 7166, p. 0616, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

# 1-4 FAMILY RIDER

## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 28th day of DECEMBER, 2006 ............, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 2804 BECKON DRIVE

EDGEWOOD, MD 21040

*(Property Address)*

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are now or hereafter attached to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF THE PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

MULTISTATE 1-4 FAMILY RIDER
FNMA/FHLMC Uniform Instrument

Form 3170 1/01  (Page 1 of 3)
EC024L Rev. 11/13/00

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0617, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.\* ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

MULTISTATE 1-4 FAMILY RIDER
FNMA/FNLMC Uniform Instrument

Form 3170 1/01   (Page 2 of 3)
EC024L Rev. 11/13/00

LIBER **07166** FOLIO **617**

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0618, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

* Section H is deleted in its entirety if the Property is located in the State of Michigan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
ROY WALLACE                      -Borrower

MULTISTATE 1-4 FAMILY RIDER
FNMA/FNLMC Uniform Instrument

Form 3170 1/01   (Page 3 of 3)
EC024L Rev. 11/13/00

LIBER **07166** FOLIO **618**

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0619, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

# PREPAYMENT RIDER

THIS PREPAYMENT RIDER is made this ...28th..... day of ...DECEMBER....2006...... , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to ............................................... ...WELLS FARGO BANK, N.A................................................................................of the same date and covering the Property described in the Security Instrument and located at: 2804 BECKON DRIVE, EDGEWOOD, MD 21040.................................................
**(Property Address)**

**PREPAYMENT COVENANTS. In addition to the covenants and agreements** made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first ..three.... (..3..) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge as follows:

.X... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount. If within the third year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to one percent (1%) of the original principal amount.

(Page 1 of 2)
PP010A Rev. 09/13/05

Prepayment Rider

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0620, MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount.

In the event the maturity of the Note is accelerated for any reason during the applicable period of the prepayment charge, then the prepayment charge set forth herein shall be due and payable.

All interest, fees and other amounts charged or accruing in connection with the Note which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC 85; 12 C.F.R. & 7.4001(a)) shall be governed by and interpreted under South Dakota law. In all other respects, the Note and all related documents, as well as the rights, remedies, and duties of the Lender and the Borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____ (Seal)
ROY WALLACE                -Borrower

Prepayment Rider

PP010C Rev. 05/31/06

(Page 2 of 2)

State of Maryland Land Instrument Intake Sheet

☐ Baltimore City  ☒ County: __HARFORD__

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*
(Type or Print in Black Ink Only—All Copies Must Be Legible)

D#421245

| 1 | Type(s) of Instruments | ( ☐ Check Box if addendum Intake Form is Attached.) |
|---|---|---|

| | Deed | Mortgage | Other_____ | Other_____ |
|---|---|---|---|---|
| | Deed of Trust | Lease | | |

**2 Conveyance Type**
Check Box

| Improved Sale Arms-Length [1] | Unimproved Sale Arms-Length [2] | Multiple Accounts Arms-Length [3] | Not an Arms-Length Sale [9] |
|---|---|---|---|

**3 Tax Exemptions** (if Applicable) Cite or Explain Authority
- Recordation
- State Transfer
- County Transfer

**4 Consideration and Tax Calculations**

| Consideration Amount | | Finance Office Use Only — Transfer and Recordation Tax Consideration | |
|---|---|---|---|
| Purchase Price/Consideration | $ 150,400.00 | | |
| Any New Mortgage | $ | Transfer Tax Consideration | $ |
| Balance of Existing Mortgage | $ | X ( )% = | $ |
| Other: | $ | Less Exemption Amount – | $ |
| | | Total Transfer Tax = | $ |
| Other: | $ | Recordation Tax Consideration | $ |
| | | X ( ) per $500 = | $ |
| Full Cash Value | $ | TOTAL DUE | $ |

**5 Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|
| Recording Charge | $ 20.00 | $ | |
| Surcharge | $ 20.00 | $ | Tax Bill: |
| State Recordation Tax | $ | $ | |
| State Transfer Tax | $ | $ | C.B. Credit: |
| County Transfer Tax | $ | $ | |
| Other | $ | $ | Ag. Tax/Other: |
| Other | $ | $ | |

**6 Description of Property** SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| 01 | 093053 | | | | ☐ (5) |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| | 95 | | | | |

Location/Address of Property Being Conveyed (2)
2804 BECKON DR, EDGEWOOD MD 21040

Other Property Identifiers (if applicable) | Water Meter Account No.

Residential ☐ or Non-Residential ☒  Fee Simple ☐ or Ground Rent ☐  Amount: 
Partial Conveyance? ☐ Yes ☐ No  Description/Amt. of SqFt/Acreage Transferred:
If Partial Conveyance, List Improvements Conveyed:

**7 Transferred From**

| Doc. 1 - Grantor(s) Name(s) | Doc. 2 - Grantor(s) Name(s) |
|---|---|
| ROY WALLACE | |
| Doc. 1 - Owner(s) of Record, if Different from Grantor(s) | Doc. 2 - Owner(s) of Record, if Different from Grantor(s) |

**8 Transferred To**

| Doc. 1 - Grantee(s) Name(s) | Doc. 2 - Grantee(s) Name(s) |
|---|---|
| WELLS FARGO | |

New Owner's (Grantee) Mailing Address

**9 Other Names to Be Indexed**

| Doc. 1 - Additional Names to be Indexed (Optional) | Doc. 2 - Additional Names to be Indexed (Optional) |
|---|---|

**10 Contact/Mail Information**

Instrument Submitted By or Contact Person | ☐ Return to Contact Person
Name: Ray Hundley
Firm: TransContinental Title Company | ☐ Hold for Pickup
Address: 4033 Tampa Road, Suite 101
Oldsmar, Florida 34677  Phone: ( 800 ) 225-7897 | ☒ Return Address Provided

**11 IMPORTANT: *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER***

**Assessment Information**
☒ Yes ☐ No Will the property being conveyed be the grantee's principal residence?
☐ Yes ☒ No Does transfer include personal property? If yes, identify:
☐ Yes ☒ No Was property surveyed? If yes, attach copy of survey (if recorded, no copy required).

Assessment Use Only - Do Not Write Below This Line

☐ Terminal Verification ☐ Agricultural Verification ☐ Whole ☐ Part ☐ Tran. Process Verification
Transfer Number: ___ Date Received: ___ Deed Reference: ___ Assigned Property No.:

| Year | 20 | 20 | Geo. | Map. | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd. |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

Distribution: White - Clerk's Office
Canary - SDAT
Pink - Office of Finance
Goldenrod - Preparer
AOC-CC-300 (6/95)

LIBER 07166 FOLIO 621

HARFORD COUNTY CIRCUIT COURT (Land Records) JJR 7166, p. 0621 MSA_CE54_7169. Date available 02/15/2007. Printed 08/01/2018.

Exhibit

C

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):[1] **ROY WALLACE**
Lender or Servicer ("Lender"): **Wells Fargo Bank, N.A.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **12/28/2006**
Loan Number ▇▇▇▇▇▇▇▇
Property Address *[and Legal Description if recordation is necessary]* ("Property"):
**2804 BECKON DRIVE**
**EDGEWOOD, MD 21040-1314**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      **My Representations**. I certify, represent to Lender and agree:

A.      I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.      I live in the Property as my principal residence, and the Property has not been condemned; (i) I lived in the Property as a principal residence immediately prior to my displacement or (ii) I intend to re-occupy the Property as a principal residence in the future, or (iii) I do not own any single-family real estate other than the Property, and or (iv) the Property has not been condemned  The certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof, and the Property has not been condemned;

C.      There has been no change in the ownership of the Property since I signed the Loan Documents;

D.      I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

E.      Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION AGREEMENT - Non GSE  with PRA                                    *(page 1 of 7 pages)*

Represents Redacted Information

F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **06/01/2013** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **06/01/2013.**

A.   The new Maturity Date will be:**05/01/2053.**

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$163,095.45** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   **$18,195.45** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, **$18,195.45** of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of **03/01/2013**, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$144,900.00**. Interest at the rate of **3.875%** will begin to accrue on the Interest Bearing Principal Balance as of **05/01/2013** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **06/01/2013** My payment schedule for the Modified Loan is as follows:

| Years | Interest | Interest | Monthly | Monthly | Total | Payment | Number of |
|-------|----------|----------|---------|---------|-------|---------|-----------|

**HOME AFFORDABLE MODIFICATION AGREEMENT - Non GSE with PRA**                    *(page 2 of 7 pages)*

| | Rate | Rate Change Date | Principal and Interest Payment | Escrow Payment Amount | Monthly Payment | Begins On | Monthly Payments |
|------|-------|------------------|-------------------------------|-----------------------|-----------------|-----------|------------------|
| 1-40 | 3.875 | 05/01/2013 | $594.38 | 199.81 adjusts annually after 1 year | 794.19 adjusts annually after 1 year | 06/01/2013 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.      **Additional Agreements**. I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants,

agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

HOME AFFORDABLE MODIFICATION AGREEMENT - Non GSE with PRA                    *(page 4 of 7 pages)*

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.    That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.    That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.    That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.    That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.    Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of

Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit.  This means that I cannot obtain additional advances, and must make payments according to this Agreement.  (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

Q.  That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

R.  If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

In Witness Whereof, the Lender and I have executed this Agreement

_D. P. Parekh_ _____

**Wells Fargo Bank, N.A.**

_____ (Seal)
ROY WALLACE
_____
Date    5-17-2013

By: _____**Dhara P. Parekh**_____
 Vice President Loan Documentation            _____ (Seal)

Date                                          _____
                                             Date

_____6-3-13_____ (Seal)               _____ (Seal)

Date                                          _____
                                             Date

**HOME AFFORDABLE MODIFICATION AGREEMENT - Non GSE  with PRA**           *(page 6 of 7 pages)*

**Other Pertinent Information**

Any special instructions related to preparation of this document, use of special signature forms, required riders or addenda, etc. are discussed below.

1.  If the borrower is an *inter vivos* revocable trust, we may require: a special rider, a different signature form for the trustee signature, and a special signature acknowledgment for the settlor/credit applicant(s).  Lenders are responsible for making any modifications, including the use of different terminology, needed to conform to the signature forms customarily used in the applicable jurisdiction and will be held fully accountable for the use of any invalid signature form(s).

   -   Each of the trustees must sign this document in a signature block substantially similar to the following, which should be inserted in the Borrower signature lines.

   _____, *Trustee of the* _____ *Trust*
   *under  trust  instrument  dated* _____ ,  *for  the  benefit  of*
   _____ *(Borrower)*.

   _____[Space Below This Line For Acknowledgement]_____

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.

PO BOX 1629
MINNEAPOLIS, MN 55440-9790

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Harford, Maryland**
 "WALLACE"

Date of Assignment  December 29th, 2011
Assignor: WELLS FARGO BANK, NATIONAL ASSOCIATION at 1 HOME CAMPUS, DES MOINES, IA 50328
Assignee: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR BCAPB LLC TRUST 2007-AB1 at 1761 EAST SAINT ANDREW PLACE, SANTA ANA, CA 92705-4934

Executed By: ROY WALLACE, AS SOLE OWNER.  To: WELLS FARGO BANK, N.A.
Date of Deed of Trust: 12/28/2006 Recorded: 01/18/2007 in Book/Reel/Liber: 07166 Page/Folio: 593 as Instrument No.: N/A  In the County of Harford, State of Maryland.

Property Address: 2804 BECKON DRIVE, EDGEWOOD, MD 21040

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named assignee, the said Deed of Trust having an original principal sum of $150,400.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the Deed of Trust.
   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever, subject to the terms contained in said Deed of Trust.

   IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

 WELLS FARGO BANK, NATIONAL ASSOCIATION
 On **1 2 - 2 9 · 1 1**

By: *Nacy D Sorensen*
     Nancy D. Sorensen
 Vice President Loan Documentation

```
INP FD SURE $        40.00
RECORDING FEE        20.00
TOTAL                60.00
Reg# HA04   Rcpt # 28478
JJR    PO    Blk # 737
Jan 04, 2012      02:56 PM
```

STATE OF Minnesota
COUNTY OF Dakota

On **1 2 - 2 9 · 1 1**____, before me, _____Robert W. Caruso_____, a Notary Public in Dakota County in the State of Minnesota, personally appeared _____**Nancy D. Sorensen**_____, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____Robert W. Caruso_____
Notary Expires: 1/31/day

ROBERT W. CARUSO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

               (This area for notarial seal)

Represents Redacted Information

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.

PO BOX 1629
EAGAN, MN  55121-4400

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST

**Harford, Maryland**
"WALLACE"

Date of Assignment: August 17th, 2017
Assignor: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA  50328
Assignee: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR BCAPB TRUST LLC
2007-AB1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AB1 at 1761 E  ST.
ANDREWS PLACE, SANTA ANA, CA  92705

Executed By: ROY  WALLACE, AS SOLE OWNER.  To: WELLS FARGO BANK, N.A.
Date of Deed of Trust:  12/28/2006 Recorded:  01/18/2007  in Book/Reel/Liber: 07166 Page/Folio: 593  In
the County of Harford, State of Maryland.

Property Address: 2804 BECKON DRIVE, EDGEWOOD, MD  21040

Legal:  N/A

This Assignment is being recorded to amend that Assignment recorded on 01/04/2012 at Book 09473 and
Page 141, as that Assignment incorrectly shows the Assignee to be Deutsche Bank National Trust
Company, as Trustee for BCAPB LLC Trust 2007-AB1, whereas it should show Deutsche Bank National
Trust Company, as Trustee for BCAPB Trust LLC 2007-AB1 Mortgage Pass-Through Certificates, Series
2007-AB1.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named
assignee, the said Deed of Trust having an original principal sum of $150,400.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the
Deed of Trust.
TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever,
subject to the terms contained in said Deed of Trust.

IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above
written:

WELLS FARGO BANK, N.A.
On _____8-17-17_____

By _____
**John Kealy**
Vice President Loan Documentation

```
Assignment
Recording Fee      20.00
Name: Wallace
Ref:
LR - Assignment
Surcharge          40.00
=======================
SubTotal:          60.00
=======================
Total:             60.00
08/23/2017  12:59
                CC12-JM
#8954637 CC0302 -
Harford
County/CC03.02.11 -
Register 11
```

**MAIL TO:**   WELLS FARGO BANK N A
1000 BLUE GENTIAN ROAD
EAGAN MN  55121

**CORRECTIVE ASSIGNMENT OF DEED OF TRUST PAGE 2 OF 2**

STATE OF Minnesota
COUNTY OF Dakota

On __8-17-17__, before me, ___Bhavdip Chhotalal Chauhan___, a Notary Public in the State of
Minnesota, personally appeared _____·__John Kealy_____ Vice President Loan
Documentation of WELLS FARGO BANK, N.A., personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

_Bhavdip Chhotalal Chauhan_
Notary Expires __/9/12,__

> BHAVDIP CHHOTALAL CHAUHAN
> NOTARY PUBLIC - MINNESOTA
> MY COMMISSION EXPIRES 01/31/2021

(This area for notarial seal)

**PREPARED BY: WELLS FARGO BANK, N.A.**

**Exhibit**

**D**

**Fill in this information to identify your case and this filing:**

Debtor 1          **Roy A. Wallace**
                  First Name          Middle Name          Last Name

Debtor 2
(Spouse, if filing)    First Name          Middle Name          Last Name

United States Bankruptcy Court for the:    DISTRICT OF MARYLAND, BALTIMORE DIVISION

Case number    **1:18-bk-14827**

☐ Check if this is an
   amended filing

# Official Form 106A/B
# Schedule A/B: Property                                           12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**    **Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

1.1

**3425 Tewkesbury Rd**
Street address, if available, or other description

**Abingdon          MD    21009-1095**
City                State    ZIP Code

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    **$287,000.00**

Current value of the portion you own?    **$287,000.00**

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Tenancy by the Entirety**

☐ **Check if this is community property**
   (see instructions)

---

Official Form 106A/B                        Schedule A/B: Property                                    page 1

Debtor 1    **Wallace, Roy A.**                                           Case number *(if known)*    **1:18-bk-14827**

1.2   **If you own or have more than one, list here:**

**2804 Beckon Dr**

Street address, if available, or other description

**Edgewood**        **MD**    **21040-1314**

City                     State        ZIP Code

County

**What is the property?** Check all that apply

☐ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

☐ Land

☐ Investment property

☐ Timeshare

☐ Other _____

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$120,000.00** | **$120,000.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Fee Simple**

☐ **Check if this is community property**
(see instructions)

---

2.   **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................................=>**          **$407,000.00**

**Part 2:   Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

3.   **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

3.1   Make:   **Mercedes-Benz**

Model:   **CLA250 4matic**

Year:   **2014**

Approximate mileage:   **51000**

Other information:

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$27,000.00** | **$27,000.00** |

4.   **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5   **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................................=>**          **$27,000.00**

**Part 3:   Describe Your Personal and Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|---|

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No

Official Form 106A/B                      Schedule A/B: Property                                    page 2

Software Copyright (c) 2018 CINGroup - www.cincompass.com